## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ADRIAN SLAUGHTER

CIVIL ACTION

VERSUS

NO.   18-362-JWD-EWD

BEAUREGARD TORRES, III

## RULING AND ORDER

This matter comes before the Court on *Defendant's Motion to Dismiss* (Doc. 44) filed by Defendant Beauregard Torres, III ("Defendant"). Plaintiff Adrian Slaughter ("Plaintiff") opposes the motion. (Doc. 46.) Defendant filed a reply. (Doc. 47.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part. Specifically, the motion is denied without prejudice as to Plaintiff's claims under 42 U.S.C. § 1983 against Defendant in his official capacity. In all other respects, the motion is granted.

I.    **Relevant Background**

A.  **Factual Allegations**

The following factual allegations are taken from Plaintiff's Amended Complaint. (Doc. 41.) They are assumed to be true for purposes of this motion. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff, an African American male and former employee of the Pointe Coupee Parish Sheriff's Office, initiated this lawsuit against Defendant, individually and in his official capacity, asserting violations of federal and state laws. (Doc. 41 at 1–2.) At all relevant times, Defendant was the Sheriff of Pointe Coupee Parish, Louisiana. (*Id.*)

1

Plaintiff began his employment with the Pointe Coupee Parish Sheriff's Office in 1988 as a road deputy. (*Id*. at 3.) His position changed about a year later when he started working patrol at the prison. (*Id*.) In 2005, he left to work as a corrections officer for the East Baton Rouge Sheriff's Office. (*Id*.) Plaintiff returned to the Pointe Coupee Sheriff's Office in 2008 to serve as Captain of Uniform Patrol. (*Id*.)

In early March 2017, shortly after learning of Plaintiff's interest in running for Sheriff, Defendant called Plaintiff into his office and accused him of stealing time. (*Id*.) Specifically, Defendant accused Plaintiff of working "his regular 8-4 shift" and "serving a detail at the same time." (*Id*. at 4.) Despite Plaintiff's requests, Defendant would not provide documentation of these accusations. (*Id*.) Instead, Defendant told Plaintiff that resignation was his only option, commenting that "this would all go away" if Plaintiff just resigned. (*Id*.) Plaintiff refused. (*Id*.)

Defendant turned his alleged findings regarding Plaintiff's false pay records to the Attorney General's office for investigation. (*Id*. at 8.) On March 23, 2017, "Defendant arrested Plaintiff and charged him with sixteen counts of alleged payroll fraud and alleged malfeasance in office." (*Id*. at 4.) Prior to Plaintiff's arrest, Defendant "called a press conference and alerted local media channels that Plaintiff was going to be arrested." (*Id*. at 8.) As a result, Plaintiff's arrest received media coverage, which was seen by Plaintiff's family, both locally and nationally. (*Id*.) On March 31, 2017, Plaintiff received a letter from the Pointe Coupee Sheriff's Office advising that his employment was terminated. (*Id*. at 4.)

Following Plaintiff's arrest, the District Attorney for Pointe Coupee Parish filed criminal charges against Plaintiff, for which he was ordered to appear before the 18th Judicial District Court. (*Id*. at 2, 4.) Plaintiff alleges that, "[e]ven though Defendant was the source of the arrest and media coverage," Defendant failed to advance the case by subsequently invoking his Fifth

Amendment privilege against self-incrimination. (*Id*. at 8.) The Attorney General declined to prosecute the case against Plaintiff, and the state court criminal proceedings were ultimately dismissed. (*Id*.)

Based on the foregoing events, Plaintiff claims that he was subjected to disparate treatment because of his race. (*Id*. at 3.) In particular, the Amended Complaint describes a similarly situated "white officer, employed in school resource" who "works straight days and takes vacation time to work at the same hospital that Plaintiff was accused of working at while on the clock with the Sheriff's Office." (*Id*. at 4.) Plaintiff asserts that Defendant neither questioned this white officer's ability to work the detail nor criminally accused him of stealing time. (*Id*. at 5.) Plaintiff also generally alleges that similarly situated white officers "engaged in the very same conduct Plaintiff was accused of engaging in, but these white officers were not criminally charged." (*Id*. at 6.) Additionally, Plaintiff allegedly obtained a recording of a conversation among officers, during which they complained about Plaintiff serving as a commander "because he is Black/African American." (*Id*. at 5.) When Plaintiff brought this recording to Defendant's attention, "Defendant did absolutely nothing in response," according to the Amended Complaint. (*Id*.)

Plaintiff claims that Defendant's discriminatory employment practices violated his rights secured by Title VII of the Civil Rights Act, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment. (*Id*. at 1, 7, 10.) Plaintiff's Amended Complaint also asserts causes of action for intentional infliction of emotional distress ("IIED") and defamation pursuant to Louisiana Civil Code article 2315. (*Id*. at 1.)

The Amended Complaint alleges three distinct counts: Count I is titled "Hostile Work Environment/Discrimination on the basis of Race and/or Color/Disparate Treatment in violation of 42 U.S.C. Section 1981 as amended" (*id*. at 5); Count II is unnamed but appears to assert claims

for false arrest and IIED (*id.* at 6); and Count III is titled "Defamation" (*id.* at 8). Plaintiff further states that the continuous tort doctrine applies to all allegations set forth in his Amended Complaint. (*Id.* at 2, 7.) Regarding damages, Plaintiff alleges that he "is entitled to all legal and equitable remedies available under" Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1988, and 42 U.S.C. § 1983, including declaratory relief, injunctive relief, compensatory damages, punitive damages, attorney's fees, court costs, and interest. (*Id.* at 7, 9.)

### B.  The Instant Motion

Defendant moves this Court to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 44.) In support of his motion, Defendant attaches as Exhibit A five pages of documents from Plaintiff's state court proceedings for the criminal charges, including the affidavit and warrant for Plaintiff's arrest. (Doc. 44-3.) Defendant argues that the Court may consider Exhibit A because these documents were incorporated into the Amended Complaint by reference and concern matters of which the Court may take judicial notice. (Doc. 44-2 at 3–4.) Plaintiff objects to consideration of Defendant's exhibit, ostensibly because the substance of Defendant's arguments that rely on Exhibit A are not referenced in the Amended Complaint, though Plaintiff's position is unclear from his opposition. (*See* Doc. 46 at 3.)

Plaintiff similarly attaches 119 pages of documents as Exhibits 1, 2, and 3 to his opposition. (Doc. 46-1.) These exhibits include documents from the Attorney General's Office, such as responses to a public records request for file materials from its investigation of Plaintiff, correspondence with defense counsel, and a press release. (*See id.*) Defendant does not object to Plaintiff's exhibits in his reply. (*See* Doc. 47.)

Preliminarily, the Court must determine whether to consider the parties' respective exhibits. In general, pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6)[,] . . . matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). There are some exceptions to this standard, however. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. June 12, 2018) (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)).

As the Fifth Circuit has explained, "[i]f the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)). "[T]he mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) motion into a motion for summary judgment." *Id.* (quoting *Finley Lines Joint Protective Bd. v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (second alteration in original)). A district court, moreover, enjoys broad discretion in deciding whether to treat a motion to dismiss as a motion for summary judgment. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 280 n.6 (5th Cir. 1991).

The Fifth Circuit has recognized a limited exception to the general rules under Federal Rule of Civil Procedure 12(d) and related jurisprudence. The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland*

*Sec.*, 441 F. App'x 246, 248 (5th Cir. 2011); *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

The Court notes that some of the documents attached as exhibits are not referenced in the Plaintiff's Amended Complaint and are not necessary for this Court to decide the present motion. Nevertheless, the Court will consider the parties' exhibits, as they are public records of which the Court may take judicial notice. S*ee Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 21-CV-362-JWD-SDJ, 2022 WL 90238, at *6 n.67 (M.D. La. Jan. 7, 2022) (taking judicial notice of Court document as matter of public record in ruling on motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)) (citing *Fetty v. La. State Bd. of Priv. Sec. Exam'rs*, CV No. 18-517-JWD-EWD, 2020 WL 448231, at *8 (M.D. La. Jan. 28, 2020); *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018)). As such, the Court will not convert Defendant's Rule 12(b)(6) motion into a motion for summary judgment.

## II.    Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of a legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

### III.    Discussion

#### A.  Parties' Arguments

##### 1.  Defendant's Original Memorandum (Doc. 44-2)

Defendant moves for dismissal of Plaintiff's Amended Complaint on the grounds that (1) Plaintiff's claims fail as a matter of law or are prescribed, (2) Defendant is entitled to qualified

immunity, and (3) Plaintiff fails to sufficiently state a claim upon which relief may be granted. (*See* Doc. 44-2 at 4–16.)

### a.  False Arrest

Defendant begins by arguing that any false arrest claims against him should be dismissed because (1) there is no legal authority to support such a claim under the Fourteenth Amendment and (2) Plaintiff's Amended Complaint fails to establish any civil rights violation for false arrest under Sections 1981 or 1983. (*Id*. at 4–7.) Regarding the first argument, Defendant contends that any Fourteenth Amendment false arrest claim should be dismissed pursuant to U.S. Supreme Court precedent, which holds that there is no Fourteenth Amendment liberty interest or due process right to be free from criminal prosecution unsupported by probable cause. (*Id*. at 4 (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).)

Second, Defendant argues that any false arrest claim under Section 1981 fails because Section 1981 does not provide a separate cause of action against government officials. (*Id*. at 5.) Defendant adds: "Section 1981 prohibits racial discrimination only to the extent it interferes with a plaintiff's right to make and enforce contracts, to sue, be a party, or to give evidence, none of which encompass a false arrest." (*Id*.) Defendant then asserts that, because the Fourteenth Amendment does not provide protection for false arrest, Plaintiff cannot assert such a claim under Section 1983. (*Id*.) Moreover, Defendant contends that, even if Plaintiff had asserted a viable underlying constitutional right relating to the arrest, his Section 1983 claim would still fail. (*Id*.) According to Defendant, the attached affidavit of arrest establishes that "Defendant clearly was not involved in the arrest process," as all possible criminal issues related to Plaintiff "were given to an independent decisionmaker to investigate and determine next steps." (*Id*. at 5–6 (referencing Ex. A, Doc. 44-3).) The attached arrest warrant also shows that the state court judge determined

that the information from the investigation was sufficient to issue an arrest warrant. (*Id*. at 6 (referencing Ex. A, Doc. 44-3).) Defendant thus contends that this independent intermediary's decision broke the causal chain and insulated Defendant from liability for false arrest, according to the Fifth Circuit's well-settled independent intermediary doctrine. (*See id*.)

### b.  Qualified Immunity

Defendant asserts that Plaintiff's Section 1983 individual capacity claims should be dismissed because he has failed to sufficiently allege facts demonstrating that Defendant is not entitled to qualified immunity. (*Id*. at 7–9.) Applying the two-step analysis for determining whether an officer is entitled to qualified immunity, Defendant argues that Plaintiff has failed to plead specific facts establishing how Defendant violated a constitutional right, and that Defendant's conduct was objectively unreasonable in light of a clearly established rule of law. (*Id*. at 8–9.) Regarding the false arrest claim, Defendant again points out the Pointe Coupee Parish Sheriff's Office was not the agency that prepared the affidavit of arrest or caused the warrant to issue. (*Id*. at 9.) Defendant concludes: "There simply is no civil rights claim against Defendant, let alone any basis to overcome immunity." (*Id*.)

### c.  Employment Discrimination

Defendant raises several grounds for dismissal of Plaintiff's employment discrimination claims. First, Defendant contends that Plaintiff's discrimination claims under Sections 1981 and 1983 should be dismissed based on Fifth Circuit precedent, which holds that liability for discrimination in public employment may not be imposed on private individuals. (*Id*. at 9–10.)

Second, Defendant argues that any Title VII claim should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing suit. (*Id*. at 10.) Specifically, Defendant

asserts that Plaintiff has neither alleged that he filed a timely Charge of Discrimination with the EEOC nor received a notice of his right to sue. (*Id*. at 10–11.)

Third, Defendant argues that any Title VII claim brought against him in his individual capacity fails for the additional reason that he is not alleged to be Plaintiff's "employer," as that term is defined in Title VII. (*Id*. at 11.)

Fourth, Defendant maintains that any employment discrimination claim arising under Section 1983 should be dismissed because Title VII provides the exclusive remedy for such violations. (*Id*. at 11–12.)

Fifth, Defendant argues that the conduct alleged in Plaintiff's Amended Complaint does not state a viable claim for hostile work environment. (*Id*. at 12–13.) Defendant's argument is based on the requisite elements of a hostile work environment claim, which he contends have not been sufficiently pled. (*Id*.) Defendant states: "He has not stated what the harassing conduct is, he has not stated that the harassment was based on race, he has not complained of harassment that is sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment, and he has not alleged any basis for finding liability." (*Id*. at 13.) Defendant therefore seeks dismissal of Plaintiff's hostile work environment claim on this basis as well. (*Id*.)

Finally, Defendant asserts that Plaintiff's prayer for punitive damages should be dismissed because 42 U.S.C. § 1981a bars Plaintiff from recovering punitive damages against him, as a public servant, for intentional employment discrimination. (*Id*. at 16.)

### d.  IIED

Defendant argues that Plaintiff's IIED claim should be dismissed because Plaintiff's allegations do not satisfy the requisite elements for this claim under Louisiana law. (*Id*. at 13–14.) Specifically, Defendant contends that Plaintiff has not alleged that Defendant's conduct was

"extreme or outrageous." (*Id*. at 14.) Nor has he alleged that Defendant "intended to inflict severe emotional distress." (*Id*.)

### e.  Defamation

Defendant seeks dismissal of Plaintiff's defamation claim based on prescription. (*Id*. at 14–16.) Defendant asserts that, regardless of whether this claim is brought under Louisiana law or Section 1983, it is subject to a one-year prescriptive period. (*Id*. at 14.) The alleged defamatory conduct took place in March 2017, according to the Amended Complaint, yet Plaintiff's defamation claim was not filed until over four years later. (*Id*. (referencing Doc. 41).) Additionally, Defendant rejects Plaintiff's allegations regarding the applicability of the continuing tort doctrine: "Plaintiff has alleged in his Complaint that the Sheriff's actions constitute a continuing tort. This allegation does not avoid prescription, since the continuing tort doctrine does not apply to defamation claims. Rather, separate defamatory publications give rise to separate causes of action." (Doc. 44-2 at 15 (citing *Davis v. Nat'l Broad. Co.*, 320 F. Supp. 1070, 1072 (E.D. La. 1970); *Neyrey v. Lebrun*, 309 So.2d 722, 725 (La. App. 4th Cir. 1975)).) Because Plaintiff's Amended Complaint does not allege that any defamatory conduct occurred within one year of July 23, 2021,[1] Defendant contends that this claim is time-barred. (Doc. 44-2 at 16.)

### 2.  Plaintiff's Opposition (Doc. 46)

### a.  Section 1983 Claim for Defamation

Plaintiff first addresses his Section 1983 claims and argues that Defendant is liable under Section 1983 because "[Defendant's] defamatory statements, as outlined in the Complaint, establish a pattern of knowingly false statements published, while in his official role as sheriff, to law enforcement and in the form of an affidavit, which resulted in the false arrest and imprisonment

---

[1] Defendant references the Amended Complaint's filing date as July 26, 2021. (*See* Doc. 44-2 at 14, 16) The Court clarifies that Plaintiff's Amended Complaint was filed into the record on July 23, 2021. (*See* Doc. 41.)

of [Plaintiff]." (Doc. 46 at 5.) Plaintiff acknowledges that "defamation is not in and of itself a constitutional tort." (*Id*.) Plaintiff submits, however, that defamation can form the basis of a Section 1983 claim when the claimant alleges stigma plus an infringement of some other interest protected under state law or incorporated into the Fourteenth Amendment's Due Process clause resulting from the defamation, according to the Fifth Circuit. (*Id*. (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700–01 (5th Cir. 1991)).) Plaintiff contends that the defamatory conduct described in his Amended Complaint meets the Fifth Circuit's standard for imposing liability under Section 1983:

> In the instant matter, [Defendant's] defamatory allegations against [Plaintiff] meet the *San Jacinto* standard in that the stigma that [Defendant] planned on, by virtue of asserting his 5th amendment right against self-incrimination, advancing/assisting in the prosecution. In addition to the extreme negative effect on [Plaintiff's] reputation by [Defendant's] defamatory conduct, [Plaintiff] also suffered economic damages due to [Defendant's] defamatory conduct.

(*Id*. at 6.)

### b.  Qualified Immunity

Next, Plaintiff maintains that he has met his burden to overcome Defendant's qualified immunity because he has established that Defendant's actions "were clearly and unambiguously prohibited" such that a "reasonable official would know his actions violate the law." (*Id*.) Plaintiff argues: "Again, the conduct complained about is the intentional act of making false claims about timesheets he approved, reporting the false allegations to the Attorney General, staging a public 'spectacle' arrest scene, then refusing to testify to give credibility to the claims." (*Id*.) Plaintiff urges that these "wanton" and "reckless" actions should strip Defendant of any immunity. (*Id*.)

### c.  Hostile Work Environment/IIED

In response to Defendant's arguments that Plaintiff's Amended Complaint fails to plead the requisite elements to support his claims for hostile work environment and IIED, Plaintiff

asserts: "Again, the facts and arguments presented above are relevant to these causes of action." (*Id.*) He then reasserts—essentially verbatim—the arguments raised earlier his opposition regarding his attached exhibits, which demonstrate that Defendant "refused to testify to advance the case he initiated" by invoking his Fifth Amendment rights. (*Id.* at 6–7 (referencing Exs. 2 and 3, Doc. 46-1).) Plaintiff concludes that Defendant's motion should be denied "because there is no one who is prepared/qualified to back up the allegations. [Defendant] invoked his 5ᵗʰ amendment right of silence, leaving the unsupported claims and scurrilous allegations hanging against plaintiff for the rest of plaintiff's life." (*Id.* at 9.)

### 3. Defendant's Reply (Doc. 47)

#### a. Section 1983 Claims

In reply, Defendant maintains that, pursuant to prevailing jurisprudence, Plaintiff's defamation claim(s) under Section 1983 and/or state law are time-barred under Louisiana's applicable one-year prescriptive period. (Doc. 47 at 2.)

#### b. Qualified Immunity

Defendant asserts that "Plaintiff's one paragraph response to [his] qualified immunity arguments" amount to "a couple of conclusory statements," which fail to overcome Defendant's qualified immunity defense. (*Id.*) Defendant also notes Plaintiff's acknowledgement that Defendant reported the allegations that Plaintiff was stealing time to the Attorney General, who then conducted the investigation and procured the arrest warrant. (*Id.*)

#### c. Hostile Work Environment/IIED

Next, Defendant responds that Plaintiff's assertions regarding Defendant's alleged invocation of his Fifth Amendment rights have no bearing on whether Plaintiff has sufficiently

pled claims for hostile work environment or IIED. (*Id*. at 3.) He re-urges that these claims should be dismissed. (*Id*.)

### d. Waiver

Lastly, Defendant argues that Plaintiff has effectively waived certain claims by not responding to several of Defendant's arguments in his opposition. (*Id*.) Specifically, Defendant contends:

> Plaintiff has neglected to address many of the bases for Defendant's motion to dismiss, as such, the Court should rule that in addition to dismissal of the claims set forth above: (1) any Fourteenth Amendment claim for false arrest should be dismissed; (2) any civil rights claims arising from the alleged false arrest should be dismissed; (3) dismissal of any Section 1981 or 1983 claims for employment discrimination; (4) dismissal of his Title VII claims; and (5) dismissal of any purported Section 1983 employment discrimination claim.

(*Id*.) Defendant thus submits that his motion should be granted as unopposed as to these claims. (*Id*.)

### B. Issue Preclusion

Preliminarily, the Court will address the argument in Plaintiff's opposition regarding the issue preclusion doctrine. (*See* Doc. 46 at 1–2.) According to Plaintiff, this Court already "rejected" Defendant's arguments for dismissal of the Amended Complaint when it denied Defendant's previous motion to dismiss. (*See id*. (referencing Doc. 31).) Accordingly, Plaintiff urges the Court to deny the instant motion in its entirety "based on the issue preclusion tenets in collateral estoppel and/or *res judicata*." (*Id*. at 1.) In response, Defendant rejects Plaintiff's assertion that issue preclusion bars the current motion and maintains that he is free to raise any dismissal arguments regarding the Amended Complaint. (Doc. 47 at 1 (referencing Doc. 43).) The Court agrees. In its Order denying Defendant's previous motion to dismiss without prejudice, the Court specifically stated: "Torres may re-urge any argument made in this motion in response to

the Amended Complaint, if appropriate." (Doc. 43.) Thus, Plaintiff's issue preclusion argument is without merit.

### C. Qualified Immunity

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020), *cert denied*, 141 S. Ct. 1058 (2021) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). "It shields 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014)).

To rebut Defendant's qualified immunity defense, Plaintiff must establish "(1) that [Defendant] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)). "[The Court] can analyze the prongs in either order or resolve the case on a single prong." *Id.* (quoting *Garcia*, 957 F.3d at 600).

The Fourth Amendment right to be free from false arrest is clearly established. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the plaintiffs'] arrests." (citing *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975)); *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)). But "[w]here an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (citations omitted), *cert. denied*, 459 U.S. 1005 (1983).

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating" the arresting officer. *Curtis v. Sowell*, 761 Fed. Appx. 302, 304 (5th Cir. 2019) (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). Fifth Circuit precedents have applied this rule "even if the arrestee was never convicted of a crime." *Curtis*, 761 Fed. Appx. at 304 (citing *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). The Fifth Circuit has recognized, however, that this shield against liability is not absolute:

> There is an exception to the independent intermediary rule "if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). "[B]ecause the intermediary's deliberations protect even officers with malicious intent," *Buehler*, 824 F.3d at 555, "a plaintiff must show that the [officer's] malicious motive led the [officer] to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *McLin* [*v. Ard*], 866 F.3d [682,] 689 [(5th Cir. 2017)]. When analyzing allegations of taint at the motion to dismiss stage, "'mere allegations of 'taint,'" *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (quotation omitted), "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin*, 866 F3d at 690.

*Curtis*, 761 Fed. Appx. at 304–05.

Here, the Amended Complaint does not allege that Defendant deceived or withheld material information from the state court judge who found probable cause to arrest Plaintiff. *See Curtis*, 761 Fed. Appx. at 305. Rather, the Amended Complaint alleges that "Defendant caused Plaintiff to be falsely charged with a criminal offense," and ultimately arrested in March 2017, even though "Defendant knew that the charges leveled against Plaintiff were false." (*See* Doc. 41 at 6.) Yet these allegations, even when viewed in a light most favorable to Plaintiff and drawing all inferences in his favor, fail to establish that the state court judge's probable cause determination

16

was tainted by the Defendant's actions. In sum, the state court judge's independent finding of probable cause for the arrest warrant broke the chain of causation for Plaintiff's false arrest claim. Consequently, the false arrest claim cannot serve as the basis for a Section 1983 action against Defendant. Moreover, because Plaintiff failed to establish the violation of a federal right, Defendant is entitled to qualified immunity, and Plaintiff's false arrest claim against Defendant will be dismissed.

### D.  Official Capacity Claims

Defendant's motion seeks dismissal of Plaintiff's Amended Complaint in its entirety pursuant to Rule 12(b)(6). (*See* Doc. 44 at 1; Doc. 44-2 at 2.) "Plaintiff has sued Defendant in his individual and official capacities," as Defendant mentions in his original memorandum. (Doc. 44-2 at 2 (citing Doc. 41 at 2).) Yet Defendant's original memorandum does not substantively address the merits of Plaintiff's official capacity claim. Therefore, Defendant's motion on this claim is denied without prejudice because Defendant has not made a sufficient legal showing to justify dismissal.[2]

### E.  Employment Discrimination Claims

In moving to dismiss Plaintiff's hostile work environment claim, Defendant contends that Plaintiff has not pled plead sufficient facts to establish the necessary elements for this claim. The Court agrees.

---

[2] The Court notes, however, that an official capacity claim against Defendant would likely be subject to dismissal at this stage, based on Plaintiff's failure to sufficiently allege an underlying constitutional violation. *See Romain v. Governor's Office of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at *6 (M.D. La. July 22, 2016) ("An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." (citations and quotations omitted)); *see also Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) ("To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action 'taken pursuant to an official municipal policy.'" (quoting *Monell v. Dept. of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 691 (1978))). Nevertheless, the Court will withhold ruling on any official capacity claim until an amended complaint is filed and the issue is raised by Defendant.

To plead a hostile work environment claim, Plaintiff must allege that (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege or employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

To affect a term, condition, or privilege of employment, the race-based harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268. To determine whether a work environment is "hostile," a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. The environment must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 641 F.3d at 125.

Here, the Court finds that the allegations of discriminatory conduct in Plaintiff's Amended Complaint fail to plausibly state a claim for hostile work environment. Viewing the Amended Complaint's allegations in the light most favorable to Plaintiff, he has stated that he was treated differently based on his race. He has not, however, explained how this environment was "sufficiently severe or pervasive" to alter the conditions of his employment and create an abusive working environment. *See Ramsey*, 286 F.3d at 268. Consequently, the Court finds that Plaintiff's allegations are insufficient to support a hostile work environment claim against Defendant.

### F.  IIED

To state a cause of action for IIED, a plaintiff must plead the following elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Sparks v. Donovan*, 04-388 (La. App. 3d Cir. 10/13/04), 884 So.2d 1276, 1282 (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)). The conduct complained of "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.* at 1210. "Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 2000), 765 So.2d 1017, 1025.

After reviewing the Amended Complaint, the Court finds that Plaintiff does not allege sufficient facts to demonstrate that the tortious conduct was "extreme and outrageous" as required to state a claim for IIED. Although Plaintiff alleges that Defendant's conduct was "per se outrageous," "repugnant to decent society," and caused Plaintiff to suffer "emotional and psychological damages," (Doc. 41 at 6, 8) these conclusory allegations are insufficient to defeat a Rule 12(b)(6) motion. Accordingly, the Court will grant Defendant's motion to dismiss Plaintiff's IIED claim.

### G.  Waiver

Finally, many of Plaintiff's claims are subject to dismissal for an additional reason: waiver. Plaintiff's opposition failed to respond to Defendant's arguments regarding dismissal of any false

arrests claim arising under the Fourteenth Amendment, Section 1981, or Section 1983;[3] dismissal of employment discrimination claims under Sections 1981 or 1983; dismissal of any Title VII claims;[4] and dismissal of the defamation claims, whether brought under state tort law or Section 1983, as time-barred.

"The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez-Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008); *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009))); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (explaining that the defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver"); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant

---

[3] Even if Plaintiff had not waived his false arrest claim, the Court finds Defendant's argument regarding the independent intermediary doctrine persuasive. (*See* Doc. 44-2 at 5–6, 9.) According to the arrest documents attached with Defendant's motion, the facts supporting Plaintiff's arrest were placed before an independent intermediary, *i.e.*, the state court judge. (Doc. 44-3 at 1.) Consequently, this state court judge's decision to issue the warrant broke the chain of causation for false arrest, and Plaintiff has not alleged any facts to defeat application of the independent intermediary doctrine. *See Anokwuru v. City of Hous.*, 990 F.3d 953, 963–64 (5th Cir. 2021).

[4] Even if Plaintiff had not waived his Title VII claim, the Court notes that dismissal of this claim would still be warranted. The Fifth Circuit has repeatedly rejected individual liability under Title VII. *See Baldwin v. Layton*, 300 Fed.Appx. 321, 323 (5th Cir. 2008) (citing *Ackel v. Natl'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) ("This circuit has held that there is no individual liability for employees under Title VII."). Moreover, under Title VII, a private plaintiff must exhaust his administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1). Yet the Amended Complaint does not reflect that a Charge of Discrimination was filed with the EEOC before Plaintiff filed suit, as Defendant correctly notes in his original memorandum. (*See* Doc. 44-2 at 10.)

Fifth Circuit cases'" and holding that, because appellant "fail[ed] to do either with regard to its underlying claims, . . . those claims [were] inadequately briefed and therefore waived").

"By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n. 10); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Consequently, because Plaintiff failed to meaningfully oppose Defendant's motions on the above-referenced issues, the Court will grant Defendant's motions on those claims on the grounds of waiver. *See JMCB*, 336 F. Supp. 3d at 634 (finding that the operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also Wuestenhoefer*, 105 F. Supp. 3d at 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).

## IV.    Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted.'" *Byrd v. Bates*,

220 F.2d 480, 482 (5th Cir. 1955) (quoting *John Walker & Sons v. Tampa Cigar Co.*, 197 F.2d 72,

73 (5th Cir. 1952)). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in his initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, although Plaintiff has not requested leave to amend to cure any deficiencies, the

Court will act in accordance with the "wise judicial practice" and general rule and grant Plaintiff

leave. *See JMCB*, 336 F. Supp. 3d at 642; *see also Fetty v. Louisiana State Bd. of Private Sec.*

*Examiners*, No. 18-517, 2020 WL 520026, at *15 (M.D. La. Jan. 31, 2020) (deGravelles, J.) (citing

*JMCB*, 336 F. Supp. 3d at 641–42); *Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at

*1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result) (citing, *inter alia*, *JMCB*).

Finally, Plaintiff's opposition raises issues regarding Defendant's alleged invocation of the Fifth Amendment, and whether that should disqualify Defendant's testimony or justify an adverse inference against him. (*See* Doc. 46 at 7–9.) The Court passes on these issues at this time. However. Plaintiff should address these issues more fully in an amended complaint.

V.    **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 44) filed by Defendant Beauregard Torres, III is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's motion is **GRANTED** in that all of Plaintiff's claims, except for the Section 1983 claim against Defendant in his official capacity, are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is given twenty-eight (28) days in which to amend the operative complaint to cure the deficiencies therein. Failure to do so will result in dismissal of Plaintiff's claims with prejudice.

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED WITHOUT PREJUDICE** as to Plaintiff's Section 1983 official capacity claim.

Signed in Baton Rouge, Louisiana, on <u>March 22, 2022</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**